BEAL-BURROW DRY GOODS COMPANY *v.* TALBURT.

Opinion delivered June 9, 1919.

1. BANKRUPTCY — PARTNERSHIP — WAIVER OF SECURITY. — Where a creditor of a firm delivered pledged notes to one of the partners for collection and renewal and he, in violation of the agreement, retained the proceeds, the creditor, by filing his claim and accepting a dividend as an unsecured creditor in bankruptcy proceedings against the firm, did not waive his claim against the partner for misappropriation of the proceeds of the note.

2. SAME—ACCEPTANCE OF DIVIDEND—WAIVER.—Where the creditor of a partnership delivered certain pledged notes to one of the partners for collection or renewal, and the partner, in violation of his agreement to pay the proceeds to the creditor, used such proceeds to pay off other indebtedness, the creditor, by accepting a dividend in the partnership's bankruptcy proceeding, did not waive the right of action against such partner for misappropriation of the proceeds, upon the theory that it shared in the distribution of the proceeds, since they did not constitute part of the partnership assets administered in bankruptcy.

Appeal from Marion Chancery Court; *Ben F. McMahan,* Chancellor; reversed.

*Richard M. Mann,* for appellant.

1. Appellee wilfully and maliciously injured the property of appellant and liability for the act was not released by his discharge in bankruptcy. Bankrupt Act of February 5, 1903, § 17; 242 U. S. 138; 37 Sup. Ct. 38; 61 L. Ed. 205; 112 N. Y. Supp. 987; 210 N. Y. 175; 104 N. E. 135; 195 U. S. 176; 49 L. Ed. 147; 193 U. S. 473-485; 748 L. Ed. 754, 759-760; 24 Sup. Ct. Rep. 505; 97 S. E. 78. Both the notes and money were fraudulently appropriated. 139 N. W. 883; 243 Fed. 770. The discharge in bankruptcy was not a release of the claim. Cases *supra.*

2. The debt involved was one created by fraud, embezzlement, misappropriation and defalcation by one acting in a fiduciary capacity, and was not released by his discharge in bankruptcy. 195 U. S. 176, 49 L. Ed. 147; 72 N. J. Eq. 473; 66 Ark. 420; 62 So. 765; 182 Ala. 413; 5 Denio (N. Y.) 269; 156 Fed. 541.

3. The notes were obtained by false pretense and fraud and are not barred by a discharge in bankruptcy. 228 U. S. 28, 57 L. Ed. 718.

Appellant did not waive its right by filing its claim in bankruptcy and accepting dividends declared. Nor is it estopped by so filing its claim. 123 Ark. 403; 242 U. S. 138, 37 Sup. Ct. 38, 61 L. Ed. 205; 228 U. S. 28, 57 L. Ed. 718. The decree should be reversed and judgment entered here for the debt and interest. Cases *supra.*

*Williams & Seawell,* for appellee.

The only question involved is the election of remedies. Appellant's claim was a secured one by pledge of notes. 1 Remington on Bankruptcy (2 ed.), § 748; *Ib.* 752; 123 Ark. 403.

By electing to prove its entire claim as an unsecured creditor it elected to waive its lien on the notes. 123 Ark. 403.

McCULLOCH, C. J. This is an action instituted by appellant against appellee in the chancery court of Marion County to recover the amount of funds alleged to have been collected by appellee as the agent and trustee of appellant and wrongfully appropriated to another use in violation of the trust. Appellee pleaded his discharge in bankruptcy, and also pleaded that appellant is estopped to pursue the remedy adopted in the present action by reason of its election to pursue another remedy in the bankruptcy court.

The facts of the case are undisputed. Appellee and one Fee composed a mercantile firm doing business in Marion County, Arkansas, and the firm became indebted to appellant in the sum of $2,631.36, and pledged to appellant certain promissory notes executed by customers of the copartnership. On January 10, 1916, appellant delivered said notes to appellee under a written contract whereby appellee undertook to collect the notes, or to secure renewals from the several obligors, and to return to appellant "the original notes or renewal notes or the cash received in payment of any one or all of these

notes." Appellee collected the amount of the notes and mingled the funds with funds in bank of the copartnership, and in that way used the funds in the general business of the firm in the purchase of merchandise and in the payment of accounts of other creditors. In April, 1916, the copartnership and appellee went into voluntary bankruptcy and were discharged after having been adjudged to be bankrupt. Appellant proved its claim against the copartnership and received a dividend of about $800, which was credited on the amount of the indebtedness.

While the discharge of appellee in the bankruptcy proceedings was pleaded in the answer, it is now conceded that the discharge itself did not operate as a bar to the present action, but it is insisted that appellant waived its right to pursue the remedy against appellee by proving up its claim in the bankruptcy proceedings against the copartnership as an unsecured creditor and accepting dividends based on the allowance of the full amount of the claim. The contention of appellee is based on the theory that appellant occupied the position of a secured creditor of the copartnership but elected to prove its claim as an unsecured creditor, and must, therefore, be held to have released its security and waived its right to proceed to the enforcement of the security. The fallacy of this argument is in assuming that appellant was, at the time it presented a claim in bankruptcy, a secured creditor within the meaning of the Federal statute. The facts do not afford basis for that contention. Appellant had, prior to the bankruptcy proceedings, held as security the notes which had been pledged by the copartnership, but that security had become dissipated by the wrongful act on the part of appellee in committing a breach of the trust in mingling the funds with those of the copartnership. The security was no longer in existence and appellant's only remedy, aside from the original obligation of the copartnership, was the right of action against appellee for his wrongful misappropriation of the funds. This, however, was purely collateral, and did not, as before

stated, put appellant in the attitude of being a secured creditor within the meaning of the bankruptcy statute. *Bank of Searcy* v. *Merchants Grocer Co.,* 123 Ark. 403.

Nor can it be said that appellant waived its right to pursue this remedy by participating in the distribution of the funds collected by appellee and mingled with the assets of the copartnership, for the proof does not show that the funds constituted a part of the assets of the copartnership at the time the assets were administered. Appellee in his answer alleged that he used the proceeds of the collection ''in the payment of the indebtedness of the said J. H. Talburt & Company,'' and in his testimony in the case he stated that he ''put the money into the bank account of the firm J. H. Talburt & Co., and paid it out to the creditors of the firm,'' and on cross-examination he stated that the money was used from the bank account ''to buy merchandise for the store and my family and I lived off the merchandise out of the store.'' It does not appear, therefore, that the funds collected constituted a part of the assets distributed in kind or that appellant was put upon notice that such was the case, and the doctrine of election does not, on that account, apply.

The decree of the chancellor was erroneous, and the same will be reversed and judgment entered here in favor of appellant for the amount claimed, with interest. It is so ordered.